**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

PEEJMAN SHADALO,

    Petitioner,

v.

JOHN MATTOS, *et al.*,

    Respondents.

Case No. 2:25-cv-02076-RFB-BNW

**ORDER GRANTING PRELIMINARY INJUNCTION**

Before the Court is Petitioner Peejman Shadalo's motion for preliminary injunctive relief (ECF No. 12).[1] Amongst other arguments, Petitioner claims that his ongoing detention at the hands of Respondents is unlawful because his removal from the United States is not reasonably foreseeable. Based on Petitioner's undisputed allegations, and the evidence he supplies, the Court finds that a preliminary injunction is warranted at this time.

///

///

---

[1] Although Petitioner seeks a temporary restraining order, see ECF No. 12, the Court treats his motion as a request for a preliminary injunction. Both forms of injunctive relief are subject to the same legal standard. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Respondents were given notice of this motion, as required by the Federal Rules of Civil Procedure. See FED. R. CIV. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). And Respondents had more than enough time to respond to Petitioner's motion. See ECF No. 13. Nonetheless, Respondents have failed to offer *any* responses in this case. See ECF No. 17. In the absence of Respondents' opposition, the Court finds there is no benefit in additional briefing, or an evidentiary hearing, on this matter. Given the liberty interest at stake and the length of Petitioner's detention, the Court finds this urgent preliminary injunction requires immediate attention. See Aparicio v. Noem, No. 2:25-cv-01919-RFB-DJA, 2025 WL 2998098, at *4 (D. Nev. Oct. 23, 2025); see also Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986) (clarifying that a district court may rely solely on briefing, and the affidavits of the parties, where the urgent need for injunctive relief so requires). Therefore, pursuant to its inherent authority to manage its own docket, the Court converts Petitioner's Motion for Temporary Restraining Order into one for a preliminary injunction. See Dietz v. Bouldin, 579 U.S. 40, 45 (2016) ("[A] district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (citations and quotation marks omitted).

## I. PROCEDURAL HISTORY

On October 24, 2025, Petitioner Peejman Shadalo filed a petition for a writ of habeas corpus in the United States District Court for the District of Nevada. See ECF No. 1-1. His case was originally assigned to the Honorable Cristina D. Silva, United States District Judge for the District of Nevada.

On October 29, 2025, Mr. Shadalo's case was transferred to the Honorable Richard F. Boulware, II, United States District Judge for the District of Nevada. See ECF No. 3.

On October 30, 2025, the Court appointed the Federal Public Defender for the District of Nevada ("FPD") to represent Mr. Shadalo based on the complexity of his case, his economic circumstances, and the interests of justice. See ECF No. 4. The Court gave the FPD 14 days to file an amended petition for a writ of habeas corpus on Mr. Shadalo's behalf. See id. at 3.

On November 13, 2025, Mr. Shadalo filed a Motion for Extension of Time to File Amended Petition. See ECF No. 8. Through it, Mr. Shadalo sought an additional 13 days to file his amended petition. See id. at 2. The Court granted this motion on that same day, and it gave Mr. Shadalo until November 26, 2025, to file an amended petition. See ECF No. 9.

On November 24, 2025, Mr. Shadalo filed a verified, amended petition for a writ of habeas corpus. See ECF No. 10. Simultaneously, Mr. Shadalo filed the instant Motion for Temporary Restraining Order. See ECF No. 12. Through them, Mr. Shadalo challenges his ongoing detention at the hands of Respondents, as well as the procedures undergirding his potential removal to an undesignated third country. See ECF Nos. 10, 12. The Court screened these filings and determined Mr. Shadalo had alleged a *prima facie* case for relief. See ECF No. 13.

Accordingly, on November 25, 2025, the Court issued an order to show cause pursuant to 28 U.S.C. § 2243. See id. The Court's Order instructed Respondents to (a.) file a "return certifying the true cause of detention" and (b.) respond to Mr. Shadalo's Motion for Temporary Restraining Order. See id. The Court ordered Respondents to file their return on, or before, December 9, 2025. See id. The Court also ordered Respondents to file their response to Petitioner's motion on, or before, December 2, 2025. See id. Respondents missed both deadlines, and—to date—they have not filed any oppositions in this case.

In response, Mr. Shadalo filed a Notice of Respondents' Non-Opposition on December 4, 2025. See ECF No. 16. Through it, Petitioner urges the Court to grant his Motion for Temporary Restraining Order because Respondents effectively consented to it. See id. Similarly, on December 10, 2025, Mr. Shadalo filed an Emergency Motion to Grant Amended Petition, or in the Alternative, for a Status Check to Address the Government's Failure to Respond. See ECF No. 17. There, Petitioner argues that the Court should grant his amended petition for a writ of habeas corpus because he "established a *prima facie* case for" relief and Respondents "ignored this Court's order to show cause." Id.

The Court's Order on Petitioner's motion for preliminary injunctive relief follows.

## II.   FACTUAL BACKGROUND

As a preliminary matter, the Court makes the following findings of fact based on Petitioner's undisputed allegations and the evidence he supplies. The Court accepts the truth of his allegations at this juncture. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (citation omitted).

Petitioner Peejman Shadalo was born in Iran, but he fled his birth country alongside his parents when he was approximately 7 years old. See ECF No. 10 at 4 (Petitioner's verified application for a writ of habeas corpus); see also ECF No. 1-1 at 16 (signed declaration of Petitioner's mother, Sara Golchen). At first, Mr. Shadalo's family moved to Germany, but they ultimately resettled in the United States in 2001 as refugees. See ECF No. 10 at 4; see also ECF No. 1-1 at 16. Mr. Shadalo later adjusted his status and became a lawful permanent resident. See ECF No. 10 at 4; see also ECF No. 1-1 at 18 (Mr. Shadalo's permanent resident card). But he was unable to pursue American citizenship because he suffered a traumatic brain injury and developed an opioid addiction. See ECF No. 1-1 at 16; see also id. at 22–24 (letters from True North Recovery & Wellness Center discussing Mr. Shadalo's substance-abuse treatment).

In 2013, Mr. Shadalo was placed in removal proceedings, and on October 10, 2013, the Executive Office of Immigration Review ("EOIR") ordered him removed to Iran. See ECF No. 10 at 4; see also ECF No. 11-2 at 2 (Mr. Shadalo's order of removal). Simultaneously, Mr. Shadalo

was granted deferral of removal to that same country pursuant to the Convention Against Torture. See ECF No. 10 at 4; see also ECF No. 11-2 at 2. Petitioner and the Department of Homeland Security waived appeal as to both of these determinations. See ECF No. 11-2 at 2. Mr. Shadalo was then detained for approximately 90 days, but he was released because Immigration and Customs Enforcement ("ICE") could not effectuate his removal. See ECF No. 10 at 4. Specifically, ICE was unable to effectuate his removal to Iran or Germany. See id.

For over a decade Mr. Shadalo remained at liberty in the United States, albeit under a term of probation with the Utah Department of Corrections and an order of supervision from ICE. See ECF No. 10 at 4; see also ECF No. 1-1 at 21 (character and compliance assessment from Mr. Shadalo's supervising probation agent); cf. also ECF No. 12 at 2 (Motion for Temporary Restraining Order). Throughout this period, Mr. Shadalo got engaged to his current fiancé, and he founded a mechanic business. See ECF No. 1-1 at 10 (Petitioner's signed custody redetermination request); id. at 13 (Petitioner's certificate of business). Then, on June 25, 2025, Mr. Shadalo was detained by ICE while attending an appointment with his probation officer in Salt Lake City, Utah. See ECF No. 10 at 4. He was then transferred to the Nevada Southern Detention Center, and he has been detained there ever since. See id. at 5.

To date, ICE has been unable to remove Mr. Shadalo from the United States. He continues to be protected against removal to Iran. See ECF No. 10 at 4. He has repeatedly attempted to secure travel documents from Germany, pursuant to ICE's requests, but Germany has refused to accept him. See id. And he has "not received any documents identifying another country of removal, or any plan of removal." Id. at 5.

### III. JURISDICTION

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl.2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted).

1  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of
2  Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St.
3  Cyr, 533 U.S. 289, 301 (2001) (citations omitted), superseded by statute on other grounds as stated
4  in Nasrallah v. Barr, 590 U.S. 573, 580 (2020). Accordingly, this Court has jurisdiction to grant
5  writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or
6  laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Trump v. J.G.G., 604 U.S.
7  670, 672 (2025) (clarifying that an immigration detainee's challenge to their confinement, and
8  removal, falls "within the 'core' of the writ of habeas corpus") (per curium) (citations and
9  quotation marks omitted); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020)
10 ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to
11 immigration detention . . . ."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We
12 conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and
13 constitutional challenges to post-removal-period detention.").

14 As habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual
15 allegations must be taken at face value. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950)
16 (citations omitted). Similarly, the certified, undisputed allegations of respondent(s) should also be
17 accepted as true *unless* they are contradicted by relevant evidence. See 28 U.S.C. § 2248

### IV. LEGAL STANDARD

20 Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary
21 injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an
22 extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
23 to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted). To
24 obtain such relief, a plaintiff "must show that: (1) [they are] likely to succeed on the merits, (2)
25 [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of
26 equities tips in [their] favor, and (4) an injunction is in the public interest." Garcia v. Google, Inc.,
27 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted).
28 The Ninth Circuit recognizes a "sliding scale" variant of the Winter standard, where a

strong showing of one factor can offset a weaker showing of another factor. See All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (quotation marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

V. **DISCUSSION**

A. PRELIMINARY INJUNCTION

Based on these factors, the Court concludes that Petitioner is entitled to a preliminary injunction. As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the remaining Winter factors weigh strongly in his favor.

i. *Likelihood of Success on the Merits*

Turning to the "most important" factor, see Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted), the Court finds Petitioner is likely to succeed in showing that his ongoing detention is statutorily—and constitutionally—unlawful.

1. **Post-Removal-Period Detention**

By way of background, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, provides a "complex statutory framework of detention authority." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Generally, § 1231 governs the detention of non-citizens who are subject to final orders of removal. See 8 U.S.C. § 1231(a); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Jennings v. Rodriguez, 583 U.S. 281, 298 (2018)) (clarifying that § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order). Specifically, when a non-citizen "is ordered removed, [the Department of Homeland Security ("DHS")] must physically remove [them] from the United States within a 90-day 'removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During this removal period, "detention is mandatory." Id. (citing § 1231(a)(2)).

Critically, a non-citizen's removal period begins on the latest of three dates: (i.) when their removal order becomes administratively final; (ii.) when a court that stayed deportation enters a final order regarding the non-citizen's removal; or (iii.) when the non-citizen is released from non-immigration detention. See 8 U.S.C. § 1231(a)(1)(B); see also Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)).

As soon as a non-citizen's removal period lapses, they must be released subject to supervision, see 8 U.S.C. § 1231(a)(3), unless they fall into one of four statutory categories. See 8 U.S.C. § 1231(a)(6); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (citations omitted) ("The post-removal-period detention statute applies to certain categories of [non-citizens]."). Namely, DHS may continue to detain a non-citizen who is: (i.) inadmissible; (ii.) removable under certain provisions of § 1227(a); (iii.) a risk to the community; or (iv.) unlikely to comply with their removal order. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (quoting 8 U.S.C. § 1231(a)(6)) "Continued detention under this provision [triggers] the 'post-removal period.'" Guzman Chavez, 594 U.S. at 529.

As written, the INA does not limit the length of post-removal-period detention. See 8 U.S.C. § 1231(a)(6). Since a statute that authorizes "indefinite, perhaps permanent, detention" poses a "serious constitutional threat," Zadvydas, 533 U.S. at 699 (citation omitted), the Supreme Court has read an implicit limitation into § 1231(a)(6) based on "the Constitution's demands." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 689). Specifically, the Zadvydas Court "held that [a non-citizen] may be detained only for 'a period reasonably necessary to bring about that [non-citizen's] removal from the United States.'" Id. (quoting Zadvydas, 533 U.S. at 689). The Supreme Court also held that six months is a presumptively reasonable period of time to deport a non-citizen. See Zadvydas, 533 U.S. at 700–701. Practically speaking, this means that the government may presumptively detain a non-citizen for up to six months once they are ordered removed from the United States. "After that point, if the [non-citizen] 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the [g]overnment must either rebut that showing or release the [non-citizen]." Guzman Chavez, 549 U.S. at 529 (citation omitted) (quoting Zadvydas, 533 U.S. at 701).

Thus, post-removal-period detention violates the INA *and the Constitution* when a non-citizen's removal is not reasonably foreseeable. Cf. Arteaga-Martinez, 596 U.S. at 579 (citation omitted) (reaffirming that Zadvydas construed 8 U.S.C. § 1231 "in light of the Constitution's demands.").

### 2. Petitioner's Post-Removal-Period Detention Is Likely Unlawful

Based on the facts of this case, the Court finds that Petitioner has established a likelihood of success on the merits of his unlawful detention claim.

As a preliminary matter, Petitioner falls within the ambit of 8 U.S.C. § 1231 because he is subject to a final order of removal. See 8 U.S.C. § 1231(a). Nonetheless, the Court finds he is not subject to mandatory detention because his removal period ended nearly *12 years ago*. The Executive Office of Immigration Review ordered Petitioner removed on October 10, 2013. Because Petitioner and DHS waived their appellate rights, Petitioner's removal order became administratively final that same day. See 8 U.S.C. § 1101(a)(47)(B)(ii); see also 8 C.F.R. § 1241.1(b) ("An order of removal . . . shall become final . . . [u]pon waiver of appeal by the respondent."); see also Padilla-Ramirez v. Bible, 882 F.3d 826, 831 (9th Cir. 2017). Thus, Petitioner's removal period began running on October 10, 2013, and it lapsed on January 8, 2014—i.e., 90 days later. See 8 U.SC. § 1231(a)(1)(A).[2] As soon as it did, Petitioner entered the post-removal period and was no longer subject to § 1231(a)(2)(A)'s mandatory detention requirement. See 8 U.S.C. § 1231(a)(3); Arteaga-Martinez, 596 U.S. at 578–79 (citations omitted).

Since Petitioner is beyond the removal period, the Court must first decide whether his ongoing detention is presumptively reasonable. It is not.[3] In making this determination, the Court considers the full amount of time that Petitioner has spent in immigration detention since he was ordered removed. In other words, the Court considers his multiple periods of detention in the aggregate. Otherwise, the government could simply circumvent the INA by releasing and re-

---

[2] The Court relies on the date of Petitioner's removal order because the remaining provisions of 8 U.S.C. § 1231(a)(1)(B) appear to be inapplicable in this case.

[3] As an aside, it is unclear whether the presumption articulated in Zadvydas even applies in cases of re-detention. See, e.g., S.F. v. Bostock, No. 3:25-cv-01084-MTK, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025) ("[F]ederal courts have refrained from applying the presumption of reasonableness under Zadvydas in re-detention cases.") (collecting cases). But, given the length of Petitioner's detention, the Court need not reach this issue in this case.

detaining non-citizens such that they never reach six months of continuous detention. That would amount to indefinite detention in all but name, which is statutorily and constitutionally impermissible. See Zadvydas, 533 U.S. at 699; see also Nguyen v. Scott, 796 F.Supp.3d 703, 722 (W.D. Wash. 2025) (citation omitted) (Surely, "under the reasoning of Zadvydas, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six month intervals."). Thus, the Court finds Petitioner has already been detained for more than six months in the aftermath of his final order of removal. When Petitioner was ordered removed in 2013, ICE detained him for approximately three months. See ECF No. 10 at 4. ICE re-detained Petitioner earlier this year, and he has been incarcerated at Nevada Southern Detention Center for approximately 5.8 months. See id. at 5. Collectively, Petitioner has been detained for around 8.8 months. Therefore, his period of post-removal detention exceeds the bounds of that which is presumptively permissible under the INA and the Constitution. See Zadvydas, 533 U.S. at 701.

Turning to the specific facts of this case, the Court finds that Petitioner has shown that his removal is not reasonably foreseeable. Petitioner was ordered removed on October 10, 2013. That was *over twelve years ago*. Despite an abundance of time, ICE has been unable to effectuate Petitioner's removal from the United States. ICE cannot deport Petitioner to his birth country pursuant to the Convention Against Torture. Germany has refused to accept Petitioner, even though ICE has repeatedly attempted to deport Petitioner there. And Respondents have not supplied any alternate plan for Petitioner's removal. On this record, this Court has "good reason to believe that there is no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." Guzman Chavez, 549 U.S. at 529 (quoting Zadvydas, 533 U.S. at 701).

Finally, Respondents have undoubtedly failed to rebut this showing. They have not presented the Court with any information or argument in this case. See ECF Nos. 13, 16, 17. Thus, Respondents have not provided a legal basis for Petitioner's continued detention given the facts established in the Petition. Petitioner should not be "burdened by the impossible task of imagining and refuting [the] causes" of his detention. See Carlson, 186 F.2d at 188. "The imagination can hardly create a situation more incompatible with the spirit of our institutions that [ ] civil

official[ls'] completely secret viewpoint[s] could be the basis of sustained imprisonment." Id. at 189. Respondents' "long and inadequately explained delay[ ]" in providing any justification for Petitioner's ongoing detention necessarily raises the presumption that he "is being illegally confined." Ruiz v. Cady, 660 F.2d 337, 340 (7th Cir. 1981) (citation omitted) (cited approvingly in Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990)). This presumption only bolsters the Court's conclusion that Respondents have failed to justify Petitioner's detention by demonstrating that his removal is, in fact, reasonably foreseeable.

In sum, at this procedural posture, the Court finds Petitioner is likely to succeed in showing that his ongoing detention is statutorily and constitutionally unlawful because his removal is not reasonably foreseeable.[4]

### ii. *Irreparable Harm*

The next factor requires a showing "that irreparable harm is likely, not just possible," in the absence of preliminary injunctive relief. See All. for the Wild Rockies, 632 F.3d at 1131. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Hence, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold no further showing of irreparable injury is necessary." Vasquez Perdomo v. Noem, 148 F.4th 656, 689 (9th Cir. 2025) (citation omitted). Since this Court has already concluded that Petitioner's ongoing detention serves as a statutory and constitutional violation, it follows "inexorably" that Petitioner has carried his burden as to irreparable harm. See Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017).

Additionally, the Ninth Circuit has also recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id. Thus, the Court finds that Petitioner's detention itself imposes concrete, irreparable harms on Petitioner.

///

---

[4] The Court does not reach Petitioner's other arguments for injunctive relief because (i.) the Court is ordering relief on the instant ground and (ii.) Petitioner's other claims are not ripe for review.

### iii. *Balance of Hardships and the Public Interest*

The remaining two factors for a preliminary injunction, the balance of equities and the public interest, "merge" when the government is the opposing party. See Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The Court now turns to Respondents' stake in a preliminary injunction. Although Respondents offer no argument on this point, the Court acknowledges that the government vindicates the public interest by enforcing this country's immigration laws—e.g., by facilitating the deportation of removable non-citizens. See Nken, 556 U.S. at 436. The problem for Respondents is that Petitioner's ongoing detention appears to be unlawful. See supra Part V.A.i. Thus, a preliminary injunction requiring his release would itself promote the rule of law. Similarly, the Court finds that this form of injunctive relief would reduce Respondents', and by extension the public's, fiscal and administrative burdens. Immigration detention is undoubtedly a costly endeavor. See Hernandez, 872 F.3d at 996 (describing the "staggering" public costs of immigration detention). Therefore, a preliminary injunction that limits unnecessary, unlawful detention would enable Respondents to direct valuable public resources to appropriate endeavors.

On the other hand, the hardships faced by Petitioner, and the public interest, weigh decisively in favor of ordering his immediate release. Since he was detained earlier this year, Petitioner has been separated from his family, employment, and community. He has not been able to marry his fiancé while incarcerated, see, e.g., ECF No. 1-1 at 19, and he has not been able to render care for his ailing mother as her primary caretaker. See ECF No. 12 at 2, 11; see also Hernandez, 872 F.3d at 996 (citation and quotation marks omitted) ("[I]n addition to the potential

1   hardships facing Plaintiffs in the absence of the injunction, the court may consider . . . the indirect
2   hardship to their friends and family members."). And, because the Court has already found that
3   Petitioner's ongoing detention is likely unlawful, "neither equity or the public interest are
4   furthered" by allowing Respondents to continue to violate the law. See Galvez, 52 F.4th at 832;
5   see also Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures
6   that individuals are not deprived of their liberty and held in immigration detention because of . . .
7   a likely unconstitutional process.").

8       As such, this Court finds that the balance of the equities and the public interest "tip sharply
9   towards" Petitioner. See All. for the Wild Rockies, 632 F.3d at 1127. Therefore, Petitioner is
10  entitled to a preliminary injunction. See id.

11      **B. SCOPE OF RELIEF**

12      Injunctive relief "should be no more burdensome to the defendant than necessary to provide
13  complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d
14  640, 680 (9th Cir. 2021) (citation and quotation marks omitted). "Where relief can be structured
15  on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id.
16  (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted
17  to discharge of the applicant from physical custody." Carafas, 391 U.S. at 239. "Its mandate is
18  broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . .
19  dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243) (alteration in
20  original).

21      Above, the Court found that Petitioner is likely being detained unlawfully, as his removal
22  from the United States is not reasonably foreseeable. Therefore, the Court finds that the specific
23  harm suffered by Petitioner must be remedied by ordering his immediate release subject to the
24  conditions of his prior order of supervision. See Johnson v. Guzman Chavez, 594 U.S. 523, 529
25  (2021) (citations omitted).

26      **C. BOND**

27      Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction
28  . . . only if the movant gives security in an amount that the court considers proper to pay the costs

and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (quoting Jorgensen, 320 F.3d at 919) (alteration in original). Respondents have not argued that releasing Petitioner will be costly; after all, they have offered no opposition to Petitioner's motion for preliminary injunctive relief. Therefore, the Court declines to impose bond in this case.

## VI.    CONCLUSION

Therefore, **IT IS HEREBY ORDERED** Petitioner's motion for preliminary injunctive relief (ECF No. 12) is **GRANTED**. Defendants must **IMMEDIATELY RELEASE** Petitioner by no later than **5:00 P.M.** on **December 15, 2025**, subject to the conditions of his prior order of supervision. See 8 U.S.C. § 1231(a)(3).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **December 16, 2025,** confirming Respondents' compliance with this Order.

**DATED:** December 14, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**